UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: SEARCH OF
QUALITY BEHAVIORAL HEALTH, INC, a
Michigan Non-Profit Corporation,

QUALITY BEHAVIORAL HEALTH, INC, a
Michigan Non-Profit Corporation,

Petitioner

-vs- Civil Action No:

UNITED STATES OF AMERICA

Respondent

______________________________________/

EMERGENCY MOTION
FOR RETURN OF PROPERTY PURSUANT TO RULE 41(g)
OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

NOW COMES QUALITY BEHAVIORAL HEALTH, INC, a Michigan Non-Profit Corporation, and pursuant to Rule 41 (g) of the Federal Rules of Criminal Procedure, respectfully moves this Honorable Court for return of property, and in support thereof, says as follows:

1. QUALITY BEHAVIORAL HEALTH, INC, is a Michigan non-profit organization providing substance use and disorder treatment since 1995.

2. It is accredited by the Joint Commission, as well as licensed by the State of Michigan, to operate six (6) facilities, five (5) of which currently treat approximately two-hundred forty-five (245) patients on an "outpatient basis" and about thirty (30) patients in a residential-treatment-facility, with an excess of sixty (60) employees.

3. QUALITY BEHAVIORAL HEALTH, INC, provides a full continuum of substance use disorder treatment, recovery services including detoxification and withdrawal management, residential treatment, outpatient services, medication-assisted treatment, mobile methadone services, recovery housing, case management and other recovery support services.

4. QUALITY BEHAVIORAL HEALTH, INC, also maintains a 24-hour access line, allowing individuals seeking help to have a place to turn when they are ready to take that step.

5. QUALITY BEHAVIORAL HEALTH, INC provides necessary services to those who are uninsured, underinsured, indigent, experiencing homelessness and housing instability or are confronted with other financial and social barriers to treatment.

6. QUALITY BEHAVIORAL HEALTH, INC provides mobile treatment services, furthering their mission of bringing treatment into communities and

helping reduce transportation, geographic, financial, and other barriers that can prevent individuals from accessing consistent care.

7. Substance use disorder does not stop because of an ongoing investigation; similarly, use disorder does not stop; overdoses do not stop.

8. In 2025, preliminary data compiled by the State of Michigan projects approximately one-thousand eight hundred (1,800) Michigan residence died from drug overdoses, thus unquestionably demonstrating the propriety and necessity for QUALITY BEHAVIORAL HEALTH, INC to continue providing necessary and reasonable services.

9. Upon information and belief, on or about August 25, 2026, a series of search warrants were executed by federal agents, resulting in the seizure, *inter alia,* of all of the patient records and charts belonging to QUALITY BEHAVIORAL HEALTH, INC, as well as freezing and/or seizing their bank accounts.

10. This conduct effectively precludes QUALITY BEHAVIORAL HEALTH, INC, from providing necessary services, as well as denying access to funds to pay its employees and suppliers.

11. Despite no criminal charges being instituted, the government has essentially and effectively "shut down" the legitimate and necessary operations of QUALITY BEHAVIORAL HEALTH, INC.

12. As demonstrated by the attached spreadsheets (Exhibits “A” and “B”), which were prepared by its Chief Financial Officer, QUALITY BEHAVIORAL HEALTH, INC is in dire need of release of seized/frozen funds to pay employees and maintain services.

- payroll checks have already “bounced” and employees have either terminated their employment with QUALITY BEHAVIORAL HEALTH due to lack of compensation or are seriously considering terminating their employment

- payroll records and systems are necessary to satisfy federal and state withholding and remittance obligations, the failure of which potentially exposes QUALITY BEHAVIORAL HEALTH and the employees which may have nothing to do with the government’s underlying investigation

13. Additionally, QUALITY BEHAVIORAL HEALTH, INC, is in potential catastrophic need to access its patients’ charts and records which are necessary for, including but not limited to:

- providing ongoing treatment decisions

- where applicable respond to requests from patients and/or other treating providers

- submit and/or respond to claims withing payor timely-filing deadlines

- satisfy obligations under HIPAA and state law to maintain access to, in continuity of, treatment

- billing records necessary to submit and defend claims within payor- and program- imposed timely-filing windows/deadlines, the loss of which may not be compensable after the fact

14. Counsel for QUALITY BEHAVIORAL HEALTH, INC has been in contact with the United States Attorney's Office seeking concurrence in this Emergency Motion, but the response has been lackadaisical with no sense of urgency.

WHEREFORE, the Petitioner, QUALITY BEHAVIORAL HEALTH, INC, a Michigan Non-Profit Corporation, respectfully prays this Honorable Court Mandate:

a. the government release sufficient funds to enable it to maintain services for its patients and suppliers;

b. the government release sufficient funds to enable it to satisfy its financial obligations for its employees;

c. release patient charts and records;

d. release payroll records and systems; and

e. such other and further relief as the Court deems equitable under given the attending circumstances.

QUALITY BEHAVIORAL HEALTH, INC,
a Michigan Non-Profit Corporation

By: [signature]
NAVEED SYED

Title: President & CEO

Subscribed and sworn to before me
this 4 day of September 2026.

[signature]
Tracie Moy, Notary Public

Oakland County, Michigan.

My commission expires: June 05, 2031

TRACIE MOY
Notary Public - State of Michigan
County of Oakland
My Commission Expires Jun 5, 2031
Acting in the County of OAKLAND

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)
Attorney for Petitioner
30445 Northwestern Highway
Suite 225
Farmington Hills, Michigan 48334-3158
(248) 855-5888
arthurweiss@ajweisslaw.com

Dated: September 4, 2026.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: SEARCH OF
QUALITY BEHAVIORAL HEALTH, INC, a
Michigan Non-Profit Corporation,

QUALITY BEHAVIORAL HEALTH, INC, a
Michigan Non-Profit Corporation,

Petitioner

-vs- Civil Action No:

UNITED STATES OF AMERICA

Respondent

_____________________________________/

BRIEF IN SUPPORT OF EMERGENCY MOTION
FOR RETURN OF PROPERTY PURSUANT TO RULE 41(g)
OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

I.

Rule 41 (g) of the Federal Rules of Criminal Procedure provides "[a] person aggrieved by…the deprivation of property may move for the property's return." "Property" is defined to "include[] documents, books, papers, any other tangible objects, and information," Fed R Crim Pro 41 (a) (2) (A). This "motion must be filed in the district where the property was seized," Fed R Crim Pro 41 (g).

Where, as in the instant cause, QUALITY BEHAVIORAL HEALTH is "a party against whom no criminal charges have been brought,"[1] their Rule 41 (g) motion is construed "a petition that the district court invoke its civil equitable jurisdiction," *Richman v United States*, 350 FRD 401, 418 (D DC 2025) (citations omitted); *see also, Ramsden v United States*, 2 F 3d 322, 324 (9th Cir 1993).

> "[S]ignificant is the equitable nature of Rule 41(e)[2] proceedings. Here, the significance varies with the movant. The text of the rule provides for two classes of movants: (1) persons "aggrieved by an unlawful search and seizure," and, (2) persons "aggrieved by ... deprivation of property." Fed R Crim P 41(e). Prior to 1989, "Rule 41(e) did not explicitly recognize a right of a property owner to obtain return of lawfully seized property." *See Amendments to the Federal Rules of Criminal Procedure,* 124 FRD 397, 427 (1989) (Advisory Committee Notes). The 1989 amendments to Rule 41(e) expanded the rule's express reach to "person[s] whose property has been lawfully seized." *Id* These persons may now "seek return of property when aggrieved by the government's continued possession of it." *Id; see also Multi–Media Distributing Co, Inc,* 836 F Supp at 613 n 6. *United States v Kelly*, 872 F Supp 556, 559-560 (ND Ind 1994).

---

[1] "Since no proceedings of any kind have been commenced against appellant, we must consider his position to be the same as that of an innocent bystander whose property has been seized for possible use as evidence in a criminal investigation," *United States v Premises Known as 608 Taylor Ave*, 584 F 2d 1297, 1301 (3d Cir 1978).

[2] "Rule 41(g) was previously designated as 41(e), and was amended without substantive change in 2002. *See Adeleke v United States,* 355 F 3d 144, 147 n 1 (2d Cir.2004)," *In re Application of Madison*, 687 F Supp 2d 103, 108 n 7 (ED NY 2009).

At this juncture, QUALITY BEHAVIORAL HEALTH has received no discovery pertaining to the execution of several search warrants. As such, we cannot currently comment—either way—upon the constitutionality of the government's conduct[3].

Consequently, we proceed in these premises with the recognition QUALITY BEHAVIORAL HEALTH is "aggrieved by the government's continued possession [of their property]," *United States v Kelly*, *supra,* 872 F Supp at 559-560; *see, United States v Kriesel*, 720 F 3d 1137, 1145 (9th Cir 2013); Fed R Crim Pro 41 (g).

> Where…the movant does not rely on an argument of unlawful seizure, the court has freer reign to balance whatever interests the defendant asserts in his or her property against the interests of the government in retaining the property. *See United States v Duncan,* 918 F 2d 647, 654 (6th Cir 1990) (concern on appeal is "whether the district court properly balanced the competing equities in deciding whether return was in order"). *In these cases, the defendant must begin with a prima facie case of lawful entitlement.* [*United States v*] *Maez,* 915 F 2d [1466, 1468 (10th Cir 1990)]. *United States v Kelly*, *supra,* 872 F Supp at 560 (emphasis added).

"Once a defendant makes out a *prima facie* case of lawful entitlement, the burden shifts to the government to prove that its interests outweigh the defendant's interests. [*United States v*] *Mills,* 991 F 2d [609, 612 (9th Cir

[3] Rule 41 (g) "applies to property seized during a criminal investigation," *Diamond Phone Card v United States*, 206 F Supp 3d 766, 769 (Ed NY 2016) (citation omitted).

1993)]....The government must show by a preponderance of the evidence that whatever interest it asserts overwhelms the defendant's interest." *United States v Kelly*, *supra,* 872 F Supp at 560.

II.

When opining upon the propriety of invoking this Court's equitable jurisdiction, historically utilization of a four (4) prong analysis was employed.

> The four relevant factors are: (1) "whether the Government displayed a callous disregard for the constitutional rights of the movant"; (2) "whether the movant has an individual interest in and need for the property he wants returned"; (3) "whether the movant would be irreparably injured by denying return of the property"; and (4) "whether the movant has an adequate remedy at law for the redress of his grievance." *Richman v United States*, *supra*, 350 FRD at 418 (citation omitted).

Admittedly, this rubric was established prior to a salient amendment to Rule 41, *see*, *Ramsden v United States*, *supra*, 2 F 3d at 325; *Richey v Smith*, 515 F 2d 1239, 1243 (5th Cir 1975).

> Under the version of Rule 41 in effect from 1944 to 1989, granting a motion for the return of property *required* the suppression of that property at any subsequent hearing or trial. *See Doane v United States,* No 08 Mag 0017(HBP), 2009 WL 1619642, at *7 (S.D.N.Y. June 5, 2009) (citing Fed R Crim P 41(e) (1989)). Therefore, under the old version of the Rule, granting the motion pre-indictment would have had the effect of suppressing evidence before the grand jury in derogation of the holding in *United States v Calandra,* 414 US 338, 94 S Ct 613, 38 L Ed 2d 561 (1974). *See Doane,* 2009 WL 1619642, at *7 ("The principal reason offered by these courts for engrafting an irreparable harm requirement onto the language of Rule 41(e) was that a pre-indictment suppression motion would unduly interfere with the function of the grand jury."). "As a result, many courts deferred pre-indictment Rule

> 41(e) motions unless a movant could show (1) the search was illegal, (2) that he is without an adequate remedy at law, and (3) that he would suffer some irreparable injury if relief is not granted." *Id* (citations omitted) (footnote omitted). *In re Application of Madison, supra,* 687 F Supp 2d at 109.

Significantly, with the codification of this amendment, the analytical rubric was substantially altered.

> Rule 41 was amended in 1989 to provide that "[i]f the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings." *Id.* (quoting Fed R Crim P 41(g))….[I]n light of the reasonable conditions that may be imposed to preserve the use of the property, the government's conclusory assertion that consideration of this motion at this juncture would interfere with the grand jury investigation is unavailing. Accordingly, petitioners need not establish irreparable harm for the court to consider their motions at this time. *Id* at 109-110 (footnote omitted).

Consequently, the criteria for implementation of the Court's equitable jurisdiction was also modified.

> "To prevail on a [Rule 41(g),] motion, a [petitioner] must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *Ferreira v. United States,* 354 F.Supp.2d 406, 409 (S.D.N.Y.2005) (quoting *United States v. Van Cauwenberghe,* 827 F.2d 424, 433 (9th Cir.1987)). *Id* at 109.

Though the objective still remains the same, the standards to be considered vary among the Courts of Appeal, *see generally*, *Richman v United States*, *supra*, 350 FRD at 418-419. Out of an abundance of caution, QUALITY

BEHAVIORAL HEALTH respectfully proffers their analysis of *all* of these norms.

a. "callous disregard for the constitutional rights of the movant"

As previously advised, we currently have no discovery and consequently cannot substantively comment upon the constitutionality of the government's conduct in these premises[4]. Nonetheless, we respectfully proffer the following salient observations.

QUALITY BEHAVIORAL HEALTH is accredited by the Joint Commission, as well as licensed by the State of Michigan, operating five (5) outpatient clinics and one (1) a residential-treatment-facility. It currently treats approximately two-hundred forty-five (245) outpatient patients and about thirty (30) inpatient patients. These individuals, for the most part, have been turned away from other facilities and usually QUALITY BEHAVIORAL HEALTH is their last realistic hope of sobriety.

Given the extensive nature of the investigation conducted by law enforcement, surely, they are intimately aware of the importance and significance of the assistance QUALITY BEHAVIORAL HEALTH provides its patients.

[4] Due to the 1989 amendment, the prerequisite of an "unlawful" seizure is no longer applicable, *In re: Singh*, 892 F Supp 1, 3 (D DC 1995); hence, this Motion may be entertained regardless of the constitutionality of law enforcement, *see, In re: Search of Office of Tylman*, 245 F 3d 978, 980 (7th Cir 2001); *Matter of Search of Kitty's East*, 905 F 2d 1367 (10th Cir 1990).

Reasonableness also mandates the government was unquestionably aware QUALITY BEHAVIORAL HEALTH employs numerous individuals to provide the requisite services and care. By seizing and freezing approximately six (6) bank accounts containing roughly fifteen million dollars ($15,000,000.00)—essentially the entirety of their banking and related financial wherewithal—the government unnecessarily created the spectre of patients not receiving mandated care and services, as well as employees not being compensated. Similarly, by seizing all of the financial records and patient files and charts, the government has prevented optimum continuity of care and operation of a lawfully and duly-licensed institution.

Exacerbating this deplorable environment, the government, as early as August of 2025, was cognizant of undersigned counsel's representation of QUALITY BEHAVIORAL HEALTH. Yet, like the proverbial mushroom, counsel was effectively kept in the dark …until *after* the execution of several search warrants giving rise to the necessity of submitting this Emergency Motion[5].

Given the nature and importance of the services provided by QUALITY BEHAVIORAL HEALTH, we cannot help but believe a methodology could have

---

[5] In this regard, we note on several occasions, both state and federal investigators contacted counsel to facilitate production of information and documentation. To our knowledge, this timely and completely transpired without incident.

been employed by the government to facilitate its investigation while at the same time not creating such a dire situation for patients and employees.

With due respect, the conduct of the government in these premises can only reasonably be construed as the epitome of "callousness" with total "disregard" for the rights of QUALITY BEHAVIORAL HEALTH, their patients and employees.

b. interest in and need for property seized

Surely, there can be no reasonable dispute QUALITY BEHAVIORAL HEALTH enjoys a cognizable "interest" in the continued care and treatment of its patients, as well the ability to compensate its employees. Therefore, it possesses a genuine and realistic "need" for the "property seized."

The government's continued retention of the items seized impermissibly "stifles" and essentially obliterates the legitimate and lawful operation of QUALITY BEHAVIORAL HEALTH, *see generally, In re Application of Madison, supra,* 687 F Supp 2d at 111.

c. irreparable injury[6]

Due to the conduct of the government, QUALITY BEHAVIORAL HEALTH is effectively precluded from providing the requisite care and treatment

[6] Subsequent to the 1989 amendment "petitioners need not establish irreparable harm for the court to consider their motions…," *In re Application of Madison, supra,* 687 F Supp 2d at 109-110 (footnote omitted).

to its patients. As of the preparation of this Motion, two (2) facilities of QUALITY BEHAVIORAL HEALTH have been shuttered; thus, adversely affecting its patient population.

Similarly, payroll checks have “bounced” and employees have either “left” or are seeking other employment, which also diminishes our ability to provide for the *remaining* patient population.

With due respect, QUALITY BEHAVIORAL HEALTH is currently experiencing “irreparable harm,”[7] *see, In re Application of Madison, supra,* 687 F Supp 2d at 117-118.

<u>d. inadequate remedy at law</u>

Alternative methodologies for return of property may encompass “months or years of delay…” *De Almeida v United States,* 459 F 3d 377, 382 (2d Cir 2006). Respectfully, neither patients nor employees enjoy the luxury of such inaction.

Accordingly, QUALITY BEHAVIORAL HEALTH has no other adequate remedy at law, *see e g, Floyd v United States,* 860 F 2d 999, 1003-1005 (10th Cir 1988) (“[t]he inquiry should always be equitable and not mechanical…”);

---

[7] “Irreparable harm” has been defined as occurring “when [the seizure] deprives a business of ‘unique property or privileged documents’ that are essential for the continued operation of its business,” *Premises Known and Described at 55 West 47th Street,* 712 F Supp 437, 440 (SD NY 1989) (citation omitted).

*$8,050.00 in US Currency v Unites States*, 307 F Supp 2d 922, 925-927 (ND Ohio 2024).

e. contraband

QUALITY BEHAVIORAL HEALTH is a lawful and licensed business and the items at issue do not constitute contraband, *see e g*, *In re Application of Madison, supra,* 687 F Supp 2d at 117-118.

f. accommodation

Inasmuch as the "spirit of equity" recognizes compromise and accommodation, QUALITY BEHAVIORAL HEALTH respectfully proffers the notion of copying the documentation necessary to conduct its operations may be appropriate, *see, United States v Gladding,* 775 F 3d 1149, 1153-1154 (9th Cir 2014); *In re Application of Madison, supra,* 687 F Supp 2d at 118.

In fact, the Court in *JB Manning Corp v United States*, 86 F 3d 926, 928 (9th Cir 1996), opined the government would retain copies of the documents while the originals were returned to the movant.

g. attorney fees

QUALITY BEHAVIORAL HEALTH is entitled to release of funds sufficient to retain the services of counsel, *see generally, United States v Unimex, Inc,* 991 F 2d 546, 549-551 (9th Cir 1992).

h. evidentiary hearing

Should the Court desire resolution of factual issues, an evidentiary hearing may be utilized, *see*, *United States v Gladding,* supra, 775 F 3d 1149 at 1152-1153; Fed R Crim Pro 41 (g).

III.

Given the facts and circumstances presented herein, consideration of applicable equitable standards mandates the instant Motion be granted, *see generally, In re: Search of Office of Tylman*, *supra,* 245 F 3d 978 at 980-981; *Richman v United States*, *supra,* 350 FRD at 418; *In re: Singh*, *supra,* 892 F Supp 3-5.

## RELIEF REQUESTED

WHEREFORE, the Petitioner, QUALITY BEHAVIORAL HEALTH, INC, a Michigan Non-Profit Corporation, respectfully prays this Honorable Court Mandate:

a. the government release sufficient funds to enable it to maintain services for its patients and suppliers;

b. the government release sufficient funds to enable it to satisfy its financial obligations for its employees;

c. release patient charts and records;

d. release payroll records and systems; and

e. such other and further relief as the Court deems equitable under given the attending circumstances.

Respectfully submitted,

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)
Attorney for Petitioner
30445 Northwestern Highway
Suite 225
Farmington Hills, Michigan 48334-3158
(248) 855-5888
arthurweiss@ajweisslaw.com

Dated: September 4, 2026.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: SEARCH OF
QUALITY BEHAVIORAL HEALTH, INC, a
Michigan Non-Profit Corporation,

QUALITY BEHAVIORAL HEALTH, INC, a
Michigan Non-Profit Corporation,

Petitioner

-vs- Civil Action No:

UNITED STATES OF AMERICA

Respondent

______________________________________/

CERTIFICATE OF SERVICE

ARTHUR JAY WEISS, counsel for QUALITY BEHAVIORAL HEALTH, INC, the Petitioner in the above-entitled matter, hereby Certifies that on the 4th day of September, 2026, he served Messrs Jason Norwood and Craig Wininger, Assistant United States Attorneys, with Emergency Motion For Return of Property Pursuant to Rule 41 (g) of the Federal Rules of Criminal

Procedure, Brief in Support of Emergency Motion For Return of Property Pursuant to Rule 41 (g) of the Federal Rules of Criminal Procedure Exhibits "A" and "B" and Certificate of Service relative to the above-entitled matter *via* electronic means.

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS